UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Gruenwald, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.

The Toro Company, and
Toro International, Inc.,

      Defendants.

Civ. No. 19-2294 (PAM/BRT)

**MEMORANDUM AND ORDER**

William Brooks, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.

The Toro Company, and
Toro International, Inc.,

      Defendants.

Civ. No. 19-2345 (PAM/BRT)

This matter is before the Court on Defendants' Motions to Dismiss, for Partial Summary Judgment, and to Strike the Class Allegations in these related cases. For the following reasons, the Motions are granted in part and denied in part.

**BACKGROUND**

Plaintiff Scott Gruenwald, an Illinois resident, bought a Toro TimeCutter riding lawnmower in 2014. He alleges that in 2018 the mower caught fire in his garage, ultimately

engulfing his entire home.

Plaintiff William Brooks is a resident of North Carolina. He too bought a Toro TimeCutter mower in 2014. In July 2019, after cutting his grass and putting the mower back in the shed in his yard, the mower caught fire. Brooks put out the fire with a fire extinguisher. There is no indication in the Complaint that any property other than the mower was damaged.

In November 2015, Toro recalled approximately 9,000 model-year 2015 TimeCutter mowers because of a fire hazard. (Brooks Compl. ¶ 5.) Gruenwald and Brooks allege that the model-year 2014 TimeCutter mowers were also defectively designed and "are prone to catching fire." (Id. ¶ 6.) Plaintiffs allege that, despite knowing of the defects, Toro has refused to recall 2014 models or notify owners of the hazard. (Id.)

Plaintiffs each seek to represent a class of "all persons in the United States who purchased or otherwise acquired a 2014 and/or 2015 Toro TimeCutter riding Lawn Mower, primarily for personal, family, or household purposes" within the relevant limitations periods. (Gruenwald Compl. ¶ 52.) They raise the same five claims against Toro: breach of the implied warranty of merchantability, negligence, unjust enrichment, strict products liability for both a design defect and failure to warn, and a claim for injunctive and declaratory relief. Toro moves for summary judgment against each Plaintiffs' warranty claim, moves to dismiss the remainder of the Counts, and seeks to strike the class allegations in both Complaints.[1]

---

[1] As stated at the hearing, the portion of the Motions seeking to strike the class allegations is premature and is therefore denied.

DISCUSSION

A. **Choice of Law**

Toro first argues that the Court must apply Illinois law to Gruenwald's implied-warranty, negligence, and strict-liability claims and North Carolina law to these same claims Brooks raises. And because this is a products-liability case, Toro contends that the Court need not engage in the traditional choice-of-law analysis because there is a presumption that the law of the state where the plaintiff lives and the injury occurred controls. Plaintiffs respond that there is no true conflict between the laws of Illinois or North Carolina and Minnesota, and that in any event, a choice-of-law analysis is required and would result in the application of Minnesota law to both Plaintiffs' claims.

To determine whether to apply the law of the forum or another state's law in a diversity case, the Court must first determine whether there is an outcome-determinative conflict between the laws sought to be applied. Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000). If there is such a conflict, then the Court must apply Minnesota's choice-of-law factors to determine which state's law to apply.

1. **Breach of Implied Warranty**

   a. <u>Illinois</u>

Under Illinois law, "with respect to purely economic loss, UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller." Rothe v. Maloney Cadillac, Inc., 518 N.E.2d 1028, 1029 (Ill. 1988). Under Minnesota law, however, an express or implied warranty "extends to any person who may

3

reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318.

Gruenwald contends that he can establish the privity Illinois law requires through Toro's express warranty, which applies to the "original purchaser" of the product. (Hurst Decl. Ex. B (Docket No. 19-2) at 49.) Toro points out that Gruenwald did not mention this warranty in his pleadings. Toro also argues that an express warranty "does not necessarily create privity for purposes of an implied-warranty claim." (Def.'s Reply Mem. (Docket No. 23) at 3 (emphasis omitted).) But even the authority Toro cites notes that Illinois courts allow plaintiffs under some circumstances to bring implied warranty claims if an express warranty creates the required privity. Smith v. Monaco Coach Corp., 334 F. Supp. 2d 1065, 1068 (N.D. Ill. 2004).

As pled, Gruenwald's implied-warranty claim appears to be barred by Illinois law. Because he may be able to plead facts establishing that it is not barred, and thus that there is no outcome-determinative conflict between Illinois law and Minnesota law, it is premature to engage in any choice-of-law analysis with respect to this claim. Gruenwald's implied-warranty claim is dismissed without prejudice.[2]

      b.     North Carolina

North Carolina also requires privity between the buyer and manufacturer for implied-warranty claims alleging only economic loss. Holland v. Edgerton, 355 S.E.2d

---

[2] At the hearing, Toro argued that any dismissal should be with prejudice because Plaintiffs have not submitted a proposed amended pleading as the Local Rules require. But Plaintiffs have not yet moved to amend their Complaints to cure any defects and thus this requirement does not apply.

514, 518 (N.C. Ct. App. 1987). Brooks raises the same argument that the express warranty creates privity for purposes of his implied-warranty claim, but unlike Gruenwald, he cites no authority that a North Carolina court would agree with this argument. Indeed, he cites only Illinois law, and argues that there is no conflict between Minnesota and Illinois as to the implied warranty claim. (Pl.'s Opp'n Mem. (Docket No. 19) at 9-11.)

Because Brooks failed to present any North Carolina authority to support his position with regard to privity, Toro has established that there is an outcome-determinative conflict in how North Carolina and Minnesota courts treat implied-warranty claims. The Court must thus engage in a choice-of-law analysis.

When a conflict exists, the Court turns to Minnesota's choice-of-law factors to determine which state's law to apply. Minnesota's five choice-of-law factors are: "1) predictability of results; 2) maintenance of interstate order; 3) simplification of judicial task; 4) advancement of the forum's governmental interests; and 5) the better rule of law." In re Baycol Prod. Litig., 218 F.R.D. 197, 207 (D. Minn. 2003) (Davis, J.) (citing Nesladek v. Ford Motor Co., 46 F.3d 734, 738-41 (8th Cir. 1995)). But the first and third factors "have generally not been applied in tort cases" and "Minnesota courts have not placed any emphasis on the fifth factor for nearly twenty years." Id. Thus, the Court focuses on the maintenance of interstate order and advancement of the forum's governmental interest.

The maintenance-of-interstate-order factor "weighs in favor of the state which has the most significant contacts with the facts relevant to the litigation." Id. But this factor "is generally not implicated if the state whose law is to be applied has 'sufficient contacts with and interest in the facts and issues being litigated.'" Hughes v. Wal-Mart Stores, Inc.,

5

250 F.3d 618, 620 (8th Cir. 2001) (quoting Myers v. Gov't Employees Ins. Co., 225 N.W.2d 238, 242 (Minn. 1974)). According to Brooks, Minnesota has significant contacts with the parties' dispute, because Toro is headquartered here and the mower at issue was designed here.[3] Toro disputes that the mower was designed in Minnesota, but the Court cannot resolve this factual dispute at this early stage of the litigation. The Court agrees, however, that Minnesota's connections to the lawsuit pale in comparison to North Carolina's—Brooks bought the mower in North Carolina, used the mower in North Carolina, and the fire occurred in North Carolina. To the extent this factor is implicated, it weighs in favor of North Carolina.

As in Hughes, Brooks argues that the advancement of Minnesota's governmental interest lies in favor of applying Minnesota law, because Minnesota "has an important governmental interest in having its product liability laws enforced against its own corporate residents when the products they sell to others injure the residents of other states." Hughes, 250 F.3d at 621. But although Minnesota has the interest Brooks describes, this interest is "tenuous." Id. "Absent some relevant connection between a state and the facts underlying the litigation, [no] important [Minnesota] governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur in another state." Id. (emphasis omitted).

Brooks's argument that Minnesota's governmental interest lies in the application of Minnesota law relies almost solely on Kolberg-Pioneer, Inc. v. Belgrade Steel Tank Co.,

---

[3] Again, Brooks's brief discusses Illinois law, not North Carolina law, in arguing that the choice-of-law factors favor Minnesota law.

823 N.W.2d 669 (Minn. Ct. App. 2012). This decision found that Minnesota law should apply to "product-liability cases involving a Minnesota manufacturer." Id. at 673. But the case involved a claim for indemnity by a downstream seller against a Minnesota manufacturer, not a direct claim of products liability against such a manufacturer. And the court's statement that "Minnesota has a clearly expressed public policy in holding a product's maker responsible for the costs of a defective product" was directed to preventing a passive seller from being "saddled with the costs of defending a product it did not design." Id. at 675. The Kolberg-Pioneer decision does not undermine the weight of authority in Minnesota holding that "in the event of a conflict, the law of the state in which the plaintiff resides will govern the claim." Baycol, 218 F.R.D. at 207. The advancement-of-governmental-interest factor weighs in favor of North Carolina. And because the two relevant factors weigh in favor of North Carolina, North Carolina law applies to Brooks's claims.

Toro seeks summary judgment on Brooks's implied-warranty claim for lack of privity and because the statute of limitations bars any claim under the mower's warranties. North Carolina law provides that Toro's express warranty modifies any implied warranty. N.C. Gen. Stat. § 25-2-316. Toro's warranty states that it is limited to three years after the date of purchase, and that all implied warranties are limited to the duration of the express warranty. Toro submits evidence that Brooks purchased the mower in June 2014, more than three years before the July 2019 fire. (Hurst Decl. Ex. A (Docket No. 17-1).)

Brooks argues that summary judgment is premature on this claim because he "is entitled to discovery on the nature of Toro's express and implied warranties." (Pl.'s Opp'n

Mem. at 3.) Brooks also submits a Rule 56(d) affidavit in support of his contention that summary judgment is premature, but that affidavit merely states that, because no discovery has yet occurred, "Plaintiff does not have fully sufficient facts at this early stage to present essential facts." (Williams Decl. (Docket No. 20) ¶ 2.)

Rule 56(d) requires the non-moving party to "show[] . . . that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Brooks's affidavit is patently insufficient to satisfy Rule 56(d). Brooks does not argue that North Carolina law allows for exceptions to a warranty's time limits, or point to any potentially discoverable facts that might extend those time limits. Thus, whether further discovery would in fact prevent the entry of judgment on this claim is doubtful. It is Brooks's burden to either establish that there is a genuine issue or that further discovery might reveal one. He has failed to do that, and Toro is entitled to summary judgment on Brooks's warranty claim.

### 2. Strict Liability

Gruenwald argues that there is no conflict between Minnesota and Illinois law with respect to his strict-liability failure-to-warn claim because Illinois, like Minnesota, recognizes a post-sale duty to warn, albeit in limited circumstances. But the case on which Gruenwald relies for this proposition found that a manufacturer could be liable for negligent failure to warn in certain circumstances, not that those circumstances apply to a strict-liability failure-to-warn claim. See Modelski v. Navistar Int'l Transp. Corp., 707 N.E.2d 239, 246 (Ill. Ct. App. 1999) (finding that a manufacturer's "[f]ailure to warn under

8

[certain] circumstances can expose the manufacturer to liability for negligence"). He cites no other authority that Illinois recognizes a strict-liability failure-to-warn claim.

Because Minnesota does recognize such a claim, the Court must determine whether Minnesota or Illinois law applies to Gruenwald's strict-liability claim. Like Brooks, Gruenwald relies almost solely on the Kolberg-Pioneer decision to argue that Minnesota's interest is superior to that of Illinois. But applying the choice-of-law factors discussed in detail above, it is clear that Illinois's interest in this litigation outweighs Minnesota's. Gruenwald lives in Illinois, bought the mower in Illinois, and suffered damages in Illinois. That Toro is headquartered in Minnesota and might have designed the mower in Minnesota simply does not outweigh the fact that the focus of this litigation is in Illinois. Minnesota has only a tenuous interest in compensating tort victims for injuries suffered wholly in another state. Illinois law applies to Gruenwald's strict liability claim. Because Illinois does not recognize a strict-liability failure-to-warn claim, this aspect of Gruenwald's claim must be dismissed.

Toro also contends that Gruenwald insufficiently pled a strict-liability design-defect claim, because he pled only that the mower caught fire. At this early stage of the litigation, Gruenwald cannot be expected to know the exact nature of the defect he alleges. This part of the Motion is denied.

Brooks does not address his strict-liability claim in his opposition memorandum. At the hearing, he conceded that there was a conflict between North Carolina and Minnesota with respect to strict-liability claims. Given the Court's conclusion above that North Carolina's interest in this litigation surpasses Minnesota's, North Carolina's

prohibition on strict-liability claims, N.C. Gen. Stat. § 99B-1.1, applies and Brooks's strict-liability claim must be dismissed.

**B.      Equitable Claims**

Plaintiffs conceded at the hearing that their claims for injunctive and declaratory relief are not appropriate and should be dismissed.

Toro argues that Plaintiffs' unjust-enrichment claims should also be dismissed because Plaintiffs have a legal remedy, and an equitable claim does not lie where there is an available legal remedy. See United States v. Bame, 721 F.3d 1025, 1031 (8th Cir. 2013) (noting that "it is the existence of an adequate legal remedy that precludes unjust enrichment recovery"). Although Plaintiffs did not address their unjust-enrichment claim in their opposition memoranda, they argued at the hearing that the claims are properly pled in the alternative. See Marty H. Segelbaum, Inc. v. MW Capital, LLC, 673 F. Supp. 2d. 875, (D. Minn. 2009) (Rosenbaum, J.) (declining to dismiss unjust-enrichment claim because "at this stage in the litigation, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity").

The Court takes a dim view of Plaintiffs' failure to present any written argument regarding their unjust-enrichment claims, and indeed could dismiss the claims on this basis alone. See Am. Prop. Dev. Sw. LLC v. Landform Eng'g Co., No. 07cv3556, 2007 WL 4461506, at *3 (D. Minn. Dec. 14, 2007) (Frank, J.) (noting that the Court need not address a claim not raised in the briefing on a motion to dismiss). At this early stage of the litigation, however, the Court will allow Plaintiffs' unjust-enrichment claims to proceed. The claims for injunctive and declaratory relief are dismissed with prejudice.

10

## C. Negligence

Toro contends that Gruenwald has failed to plausibly plead the essential elements of his negligence claim under Illinois law. Even assuming that Illinois law applies to Gruenwald's negligence claim, the elements of an Illinois negligence claim are similar to such a claim under Minnesota law: duty, breach, causation, and damages. See Dardeen v. Kuehling, 821 N.E.2d 227, 231 (Ill. 2004) ("In order to state a negligence claim, a plaintiff must allege that the defendant owed him a duty, that the defendant breached that duty, and that the defendant's breach proximately caused the plaintiff damages."); Doe 169 v. Brandon, 845 N.W.2d 174, 177 (Minn. 2014) (noting that to prove negligence, a plaintiff must establish "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury").

According to Toro, in a products liability case, "the threshold question . . . is whether the product was unreasonably dangerous due to a defective condition." (Def.'s Supp. Mem. (Docket No. 18) at 15 (citing Illinois authority).) Toro argues that Gruenwald's only allegation in this regard is that his mower caught fire. (Id. at 17.) As with the strict-liability design-defect claim discussed above, Gruenwald cannot be expected to know exactly how his mower was defective before he conducts any discovery. Toro's Motion to Dismiss Gruenwald's negligence claim is denied.

Toro argues that Brooks's negligence claim must be dismissed because North Carolina's economic loss doctrine bars the claim. (Def.'s Supp. Mem. (Docket No. 16) at 16.) Brooks did not respond to this argument in his briefing. At the hearing, he argued that there was damage to property other than the mower, making dismissal on the basis of

the economic loss doctrine inappropriate. But his Complaint pleads no such damage. Brooks's negligence claim is therefore dismissed without prejudice.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss in 19-2294 (Docket No. 16) is **GRANTED in part** and **DENIED in part**;

2. Gruenwald's claim for breach of implied warranty is **DISMISSED without prejudice**, and his strict-liability failure-to-warn claim and his claims for injunctive and declaratory relief are **DISMISSED with prejudice**;

3. Defendant's Motion to Dismiss in 19-2345 (Docket No. 14) is **GRANTED in part** and **DENIED in part**;

4. Brooks's breach-of-implied-warranty and strict-liability claims, and his claims for injunctive and declaratory relief are **DISMISSED with prejudice**; and his negligence claim is **DISMISSED without prejudice**.

Dated: December 4, 2019

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge